UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

JILL WASHBURN,

                Plaintiff,

v.

BANK OF AMERICA, N.A. AS
SUCCESSOR TO COUNTRYWIDE
HOME LOANS, INC., a Delaware
corporation; MORTGAGE
ELECTRONIC REGISTRATION
SYSTEM, INC., a Delaware
corporation; RECONTRUST
COMPANY, N.A., a corporation of
unknown origin and a wholly-owned
subsidiary of Bank of America, N.A.;
FEDERAL NATIONAL MORTGAGE
ASSOCIATION, a Federally Chartered
Corporation; and DOES 1-10 as
individuals or entities with an
interest in the property commonly
known as:

280 Horizon Drive, Boise, Idaho 83702,

                Defendants.

Case No. 1:11-cv-00193-EJL-CWD

**REPORT AND RECOMMENDATION**

## INTRODUCTION

       Plaintiff's Complaint, filed on May 2, 2011, seeks to quiet title to property used as

a single family residence. On August 1, 2011, after a request for reassignment was filed,

**REPORT AND RECOMMENDATION - 1**

District Judge Edward J. Lodge referred this case to the undersigned for all pretrial

matters. (Dkt. 17.) Pending is a Motion to Dismiss (Dkt. 4) filed by Defendants Bank of

America, N.A., ("Bank of America"), Mortgage Electronic Registration System, Inc.,

("MERS"), ReconTrust Company, N.A., ("ReconTrust") and Federal National Mortgage

Association ("Fannie Mae"). In addition, Defendants have filed a Motion for Reverse

Preliminary Injunction (Dtk. 22), seeking an order requiring Plaintiff to post bond in the

form of monthly security payments, or in the alternative for leave to conduct a trustee

sale of the real property that is at the heart of this dispute. The Court enters the following

report, recommending that Defendants' Motion to Dismiss be granted.

## BACKGROUND

Plaintiff Jill Washburn seeks to "quiet title" to property located at 280 Horizon

Drive in Boise, Idaho ("the Property), of which Washburn is the "owner of record."

(Compl. ¶ 4, Dkt. 1.) In December of 2005, Washburn executed a promissory note (the

"Note") and Deed of Trust in favor of America's Wholesale Lender[1] to obtain a

$399,000.00 loan (the "Loan") to purchase the Property. (Compl. ¶ 10, Dkt. 1; Defs.'

---

[1] Washburn has not contested Defendants' assertion that "America's Wholesale Lender was a dba of Countrywide Home Loans, Inc., which is a subsidiary of Countrywide Financial Corporation. Effective July 1, 2008, Countrywide Financial Corporation merged with and into Red Oak Merger Corporation, a direct subsidiary of Bank of America Corporation, and immediately following the merger, Red Oak Merger Corporation changed its name to Countrywide Financial Corporation." (Defs.' Mem. at 2 n.1, Dkt. 4-1.)

**REPORT AND RECOMMENDATION - 2**

Mem. Ex. 1, Dkt. 4-2; Defs.' Mot. Ex. 1, Dkt. 22-1.)[2] The Deed of Trust lists America's Wholesale Lender as the Lender and MERS as a nominee for Lender and the beneficiary under the Note. (Defs.' Mot. Ex. 1, Dkt. 4-2.) Fidelity National Title was the original Trustee, and Washburn is the Borrower and Trustor under the Deed of Trust. (*Id.*)

Washburn apparently stopped making payments on the Loan in September of 2008, and at that time was $13,908.99 in arrears. (Notice of Default, Compl. Ex. A, Dkt. 1-2.) On December 18, 2008, MERS, as the designated beneficiary under the Deed of Trust, appointed a successor trustee, ReconTrust. (Appt. of Successor Trustee, Compl. Dkt. 1-3.) The appointment was recorded with Ada County on December 22, 2008. Also on December 22, 2008, ReconTrust filed with the Ada County Recorder a Notice of Default on the Property. (Notice, Compl. Dkt. 1-2.) The Notice lists MERS as the Beneficiary under the Deed of Trust and references Fidelity National Title Company as the original Trustee. (*Id.*) Washburn received the Notice of Default, executed by ReconTrust, along with additional correspondence about the default. (Compl. ¶ 14, Dkt. 1.)

---

[2] The Court may examine documents referred to in the complaint, although not attached thereto, without transforming a motion to dismiss into a motion for summary judgment. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). The court also may consider evidence upon which the complaint "necessarily relies" if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document. *Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994). The court may treat such documents as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Therefore, the Court accepts as true all material allegations in the complaint, the deed of trust and documents attached to the complaint and motion to dismiss, as well as reasonable inferences drawn from them. *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998).

Washburn alleges she learned that Fannie Mae may own the Loan on the Property, not Bank of America. (Compl. ¶ 22, Dkt. 1.) Defendants acknowledge Washburn's allegation, but neither admit or deny it in their motion. It is this transfer of loan ownership that underlies Washburn's request for relief in this action.

Washburn alleges that MERS does not have any valid interest in the Deed of Trust because it has no pecuniary interest in the Note, and MERS or Bank of America sold any interest it had in the Loan. As a result, Washburn contends that MERS did not have authority to appoint a successor trustee or to carry out a non-judicial foreclosure sale. (Compl. ¶ 16 – 20.) Washburn points also to other irregularities that she believes "cast serious doubt on the legitimacy and legal effectiveness of the pre-foreclosure documents." (Compl. ¶ 24–38.) Washburn filed this case to "determine the interests of" Bank of America, MERS, ReconTrust, and Fannie Mae in the Property. (Compl. ¶ 39.) She also requests that Defendants be required to produce the original signed promissory note.[3]

Defendants filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Washburn has failed to state a claim for relief.[4]

---

[3] Incidentally, Defendants have attached a copy of the original, signed Note to their Motion for Reverse Preliminary Injunction. (*See* Mot. Ex. 1, Dkt. 22-1.)

[4] Since the filing of Defendants' Motion to Dismiss, several decisions were issued by the undersigned's esteemed colleagues. The Court, in an order issued on September 30, 2011, prior to the hearing, specifically requested the parties be prepared to discuss the implications, if any, of *Meyer v. Bank of America*, 1:10-cv-00632-EJL-REB [Dkt. 24]; *Armacost v. HSBC Bank*, 1:10-CV-00274-EJL-LMB [Dkt. 19, 20]; *Gilbert v. Bank of America*, 1:11-cv-00272-BLW [Dtk. 9]; and *Cervantes v. Countrywide Home Loans*, No. 09-17364, (9th Cir. Sept. 7, 2011).

# REPORT[5]

## 1.     Legal Standards for a Motion to Dismiss

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a plaintiff's claim for relief. The relevant inquiry is whether the plaintiff's allegations are sufficient under Fed. R. Civ. P. 8(a), which sets forth the minimum pleading requirement, i.e., that the plaintiff provide a "short and plain statement of the claim showing that the pleader is entitled to relief," and "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

When reviewing a motion to dismiss, the court must accept as true all non-conclusory, factual (not legal) allegations made in the complaint, *Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S.Ct. 1937, 1950 (2009); *Erickson v. Pardus*, 551 U.S. 89 (2007), and draw all reasonable inferences in favor of the plaintiff, *Mohamed v. Jeppesen Dataplan, Inc.*, 579 F.3d 943, 949 (9th Cir. 2009). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 555). In addition, "[f]actual allegations must

---

[5] The Honorable Ronald E. Bush issued a Report and Recommendation on August 29, 2011, in *Meyer v. Bank of America, N.A., et. al.*, Case No. 1:10-cv-00632-EJL-REB, which analyzed a complaint virtually identical to the case before the undersigned. This opinion borrows extensively from the well-reasoned report and recommendation issued by Judge Bush, which was adopted by District Judge Edward J. Lodge on September 30, 2011. Incidentally, the plaintiff in *Meyer* is Washburn's attorney in the case before the Court.

be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U .S. at 555. In sum, dismissal may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001); *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

The Court may not consider any evidence contained outside the pleadings without converting the motion to dismiss to one for summary judgment. *See* Fed. R. Civ. P. 12(b); *United States v. Ritchie*, 342 F.3d 903, 907-908 (9th Cir. 2003). "A court may, however, consider certain materials– documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice–without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908 (citing *Van Buskirk v. CNN*, 284 F.3d 977, 980 (9th Cir. 2002); *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994); 2 James Wm. Moore et al., MOORE'S FEDERAL PRACTICE § 12.34[2] (3d ed.1999)).

## 2. The Nature of a Quiet Title Action

No foreclosure sale has occurred in regard to the Property. As of the date the Motion to Dismiss was fully briefed, as well as at the time of oral argument on October 4, 2011, Washburn was still the Property's owner of record. (*See* Defs.' Mem. at 10, Dkt. 4-1). In Idaho, a quiet title "action may be brought by any person against another who claims an estate or interest in real or personal property adverse to him, for the purpose of determining such adverse claim." Idaho Code § 6-401. The "purpose of a quiet title

action is to establish the security of title." *Roselle v. Heirs and Devisees of Grover*, 789

P.2d 526, 529 (Idaho Ct. App. 1990).

Washburn's quiet title claim is a valid method, even if unusual in the context, to

determine the rights of the parties, but only if the title is clouded in some way by the

transfers at issue in this case. Without such a "cloud," the Court cannot perceive an estate

or interest in real or personal property adverse to Washburn. As explained below, the

Court finds that Washburn has failed to plead or otherwise establish she tendered

payment of her debt obligation. In addition, Washburn's title is not clouded in a present

way that provides a basis for quieting title in this case.

### 3.      Washburn Did Not Plead Tender[6]

"A mortgagor cannot without paying his debt quiet title as against the mortgagee."

*Trusty v. Ray*, 249 P.2d 814, 817 (Idaho 1952). This is true even where the mortgagee has

failed to pursue a foreclosure action within the applicable statute of limitations. *Id.*; *see*

*also In re Mullen*, 402 B.R. 353, 358 (Bankr. D. Idaho 2008). Plaintiff has not included

an assertion in her Complaint that she tendered payment of her debt obligation. Without

evidence or even an assertion that Plaintiff can or is willing to tender payment on her

loan, she cannot succeed on her quiet title action as a matter of law. Plaintiff must allege

that she did or can tender payment. Having not alleged tender, Defendants' motion is

---

[6] Defendants did not fully brief the issue of tender in their motion, although they did assert Washburn had not paid her mortgage. (Mem. at 2, Dkt. 4-1.) During the hearing on October 4, the parties availed themselves of the opportunity to argue the issue.

properly granted. *See Gilbert v. Bank of America, N.A., et. al* Case No. 1:11-cv-00272-BLW.[7]

At the hearing, Washburn conceded she was unable to tender full payment of her loan amount, or even bring the default amount current. She argued, however, that even if she could tender, she does not know who to pay. But the Note specifically provides the amount of each payment, and gives an address for sending payments. (Note ¶ 3, Dkt. 22-1 at 1.) Presumably, prior payments were received by the holder of the Note, as Washburn does not allege otherwise, and the Notice of Default issued once she ceased making payments.

Washburn argued also that requiring tender defeats the purpose of a quiet title action because she will not discover who the "true" owner, or Note holder, is, and that title will remain clouded until the true note holder is determined. Even assuming some yet unknown entity is the true note holder entitled to receive payments, the fact that the entity is unknown is not a cloud on the title. Rather, the instrument itself is the cloud upon Washburn's title. *See Power & Irrigation Co. of Clear Lake v. Capay Ditch Co.*, 226 F. 634, 639 (9th Cir. 1915) (explaining that a deed, which operates as a mortgage, constitutes the cloud on title). Unless and until the Note holder fails to produce clear title

---

[7] In *Gilbert*, District Judge B. Lynn Winmill granted the plaintiffs leave to amend their complaint seeking to quiet title as against the mortgagee when they had not alleged tender. Mr. Meyer, the Gilberts' attorney, (who is also Washburn's attorney in this case) filed an amended complaint in *Gilbert* on September 22, 2011, alleging that the plaintiffs "could tender payment in good faith, but they do not know the true owner or party in interest; they do not know which Defendant is the true creditor to whom the debt is owed." *Gilbert*, Am. Compl. at ¶ 11, Dkt. 11. The Court recommends that leave to amend is not appropriate in this case, because there are additional reasons for dismissing Plaintiff's claim.

and a warranty deed upon tender, Washburn may not fail to comply on her part with the provisions of the Note requiring payment. *See Rischar v. Shields Et. Ux.*, 145 P. 294, 295 (Idaho 1914) (holding that purchasers of land could not refuse to tender payments on the grounds that the seller did not have clear title; purchasers had to tender purchase price, and could only maintain an action for damages if, at that time, seller could not produce clear title).

The tender rule has been the accepted standard in quiet title suits seeking equitable relief for almost 100 years. In *Power & Irrigation Co. of Clear Lake*, the Court of Appeals for the Ninth Circuit explained, in 1915, that regardless of possession by the grantee of the mortgage, the grantor of the mortgage could remove the cloud on the title upon "doing equity by redemption and payment of the mortgage debt, . . . and that he must do equity by payment of the balance of the debt, as a condition of removing the cloud," even if the lien of the mortgage was extinguished. 226 F. at 639. The court explained that, even though the right to enforce the mortgage by foreclosure had expired by limitation, the plaintiff was required, in equity, to pay the mortgage debt to obtain relief under a quiet title action. *Power & Irrigation Co. of Clear Lake*, 226 F. at 640—41. *See also Platts v. Pac. First Fed. Sav. & Loan Ass'n* of Tacoma, 111 P.2d 1093, 1097 (Idaho 1941)(Givens, J. concurring in part, dissenting in part) ("equity will not remove a cloud on the title to real estate, occasioned by the owner's failure to pay a valid debt, while the debt remains unpaid"); *Kelley v. Clark*, 129 P.921, 926 (Idaho 1913) (stating that "one who asks equity must do equity" and, upon a showing that plaintiff owed the

debt, plaintiff was required to pay the amount due upon the mortgage foreclosure decree before the court, in equity, would quiet title in the plaintiff.). The tender rule is still the rule today, and absent the money necessary to pay the debt, a court of equity will not quiet title against the mortgagee. *Saldate v. Wilshire Credit Corp.*, 686 F.Supp.2d 1051, 1060 (E.D. Cal.2010).

Washburn has not plead that she does not owe the debt. And she conceded that she neither tendered the balance due, nor can she. The Court could end its analysis, but finds that additional discussion is warranted based upon the recently adopted report and recommendation in the similar case of *Meyer v. Bank of America*, Case No. 1:10-cv-00632-EJL-REB.

**4.      The Securitization of the Loan and its Transfer to Another Entity Did Not Extinguish the Security Interest or Otherwise Impact the Ability to Foreclose on the Trust Deed**

Washburn alleges that, when MERS included her Loan in a collateralized debt obligation/mortgage-backed security, MERS lost any interest in the Note and Deed of Trust and, as a result, its authority to appoint a successor trustee or initiate a non-judicial foreclosure sale was extinguished. (Compl. ¶¶ 12–18, Dkt. 1). Washburn asserts that when MERS sold the Loan, "it also should have transferred its interest in the collateral, the deed of trust, to the same entity that owned the loan," because a "loan without a valid beneficial interest in the deed is merely an unsecured, personal loan." (Pl.'s Opp. at 9, Dkt. 8). Washburn argues also that "Countrywide/Bank of America should have negotiated the note when it securitized the loan" and, likewise, the entity that purchased

the pool of loans with Washburn's Loan in it also should have received an assignment of the deed of trust for the security to be "backed by any mortgages." *Id.* at 16.

This is not a new battlefield. Several courts have rejected various theories that "securitization of a loan somehow diminishes the underlying power of sale that can be exercised upon a trustor's breach." *West v. Bank of America*, Case No. CV10-1966-JCM, 2011 WL 2491295 at *2 (D. Nev. June 22, 2011). *See also Beyer v. Bank of America*, ___ F.Supp.2d ___, 2011 Westlaw 3359938, *2 (D. Or. Aug. 2, 2011) (rejecting an argument that a trust deed is void when separated from a promissory note); *Hafiz v. Greenpoint Mortg. Funding, Inc.*, 652 F.Supp.2d 1039 (N.D.Cal. 2009) (rejecting plaintiff's theory that defendants "lost their power of sale pursuant to the deed of trust when the original promissory note was assigned to a trust pool"); *Chavez v. California Reconveyance Co.*, Case No. No. 2:10–cv–00325–RLH–LRL, 2010 WL 2545006 at *2 (D. Nev. June 18, 2010) ("The alleged securitization of Plaintiffs' Loan did not invalidate the Deed of Trust, create a requirement of judicial foreclosure, or prevent Defendants from being holders in due course."). The Court finds the reasoning of these cases persuasive and notes that Washburn has not cited any cases holding otherwise. Accordingly, to the extent Washburn argues that Bank of America's or MERS's securitization of the Loan or alleged transfer to Fannie Mae voids their interests in the Property, it is recommended that Defendants' Motion to Dismiss be granted.

However, even if some entity still has a power of sale that can be exercised under the Deed of Trust based on Washburn's alleged breach,[8] Washburn argues that such entity is not Bank of America or MERS, and that this clouds the title. The Deed of Trust indicates that America's Wholesale Lender is the Lender, while MERS is the named beneficiary of the Deed of Trust acting "solely as a nominee for Lender and Lender's successors and assigns,[9] although America Wholesale's status as original lender/owner of the Loan has changed.[10] Washburn appears to argue that Bank of America has assigned the Deed of Trust to Fannie Mae, but not recorded it, or that Fannie Mae is now the beneficiary on the Deed of Trust because of the Loan transfer. Washburn suggests that Bank of America's transfer of the Loan, possibly without transfer of the trust deed, may

---

[8] *See Roque v. Suntrust Mortg., Inc.*, No. C-09-00040-RMW, 2010 Westlaw 546896 at *3 (citing a California statute and rejecting a plaintiff's claim that the power of sale in the deed of trust is no longer valid "because the chain of ownership is unrecorded").

[9] The Idaho statute governing trust deed foreclosure defines "beneficiary" to mean "the person named or otherwise designated in a trust deed as the person for whose benefit a trust deed is given, or his successor in interest." Idaho Code § 45-1502(1) (emphasis added). "Trust deed" means a deed "conveying real property to a trustee in trust to secure the performance of an obligation of the grantor or other person named in the deed to a beneficiary." Idaho Code § 45-1502(3). A federal district court in Oregon has explained that "[b]ecause the purpose of the trust deed is to secure the performance of an obligation owed to the beneficiary, the benefit of the trust deed is that the obligation is fulfilled." *Beyer v. Bank of America*, ___F.Supp.2d ___, Case No. CV10-523-MO, 2011 Westlaw 3359938 (D. Or. Aug. 2, 2011).

[10] The Deed of Trust allows the Note or a partial interest in the Note to be sold one or more times without prior notice to the Borrower (here, Washburn). (Compl. Ex. 1 ¶20, Dkt. 4-2 at 10). In addition, the Deed of Trust specifically states that a sale of the Note may result in a change in the entity (known as the "loan servicer") that collects payments under the Note, and if there is such a change, Borrower will be given notice of the new Loan Servicer and the address to which payments should be sent. (Compl. Ex. 1 at ¶20, Dkt. 4-2 at 10.)

make it impossible to "cure" or "clear" the chain of title. (Pl.'s Mem. in Opp. at 16, Dkt. 8).

The Court disagrees. No matter which entity is instituting foreclosure proceedings, only one entity is doing so, and Washburn does not deny that she is in default under the loan documents. (*See* Defs.' Mem. at 2, Dkt. 4-1.) If Washburn attempted to cure her default, she has accurate information about where to send her payment and what amount to pay. (*See* Compl. Ex. 1 at ¶ 20, Dkt. 4-2.)

Washburn does not allege that any transfer of the Note or interest in the Deed of Trust resulted in a change of her loan servicer of which she was not informed. Assuming Washburn paid her debt on the Note in full, it would extinguish the obligation that is the subject of the trust deed and extinguish the trustee's power to foreclose on the Property. Thus, although the trust deed and Loan may not be for the same entity's benefit, this does not cloud the title to the Property. *See, e.g., Roque*, 2010 Westlaw 546896 (citing a California statute and rejecting a plaintiff's claim that the power of sale in the deed of trust is no longer valid "because the chain of ownership is unrecorded"). Only the trustee of the trust deed can institute foreclosure proceedings.[11] Accordingly, there are no interests in the Property to be determined. The trust deed is the only document affecting the Property. *See Roque*, 2010 WL 546896 at *3 (describing the practical effect of a trust deed to create "a lien" on the property, and rejecting, in a declaratory judgment action,

---

[11] The original trustee, or a properly appointed successor trustee, has the power to initiate non-judicial foreclosure proceedings upon "a default by the grantor or other person owing an obligation the performance of which is secured by the trust deed." Idaho Code § 45-1505(2).

the plaintiff's "tenuous assertion that the beneficiary of record of the deed of trust does not have standing to foreclose on the property because the [Loan Pooling and Service Agreement] somehow canceled the power of sale continued in the deed of trust due to the unknown chain of ownership").

Put another way, if a bank holds a security interest but not the defaulted promissory note, it may not have a reason to enforce the security interest; likewise, "a bank holding a defaulted note may want to foreclose, but cannot without the security interest." *Beyer v. Bank of America*, ___ F.Supp.2d ___, 2011 Westlaw 3359938 at *2 (D. Or. Aug. 2, 2011). As a practical matter, the holders of the two interests must support one another to collect a debt.[12] *Id*. But only one entity can foreclose— the entity that holds the security interest— and only upon a default of the obligation secured by the trust deed. Thus, for purposes of a quiet title action, the fact that MERS is named as the beneficiary does not change the rights or obligations of Washburn with regard to the Property.[13] Washburn is still required to meet her obligations under the Loan and, if she

_____

[12] In this regard, MERS argues it is the "holder's nominee" because of its designation as beneficiary and nominee for the Lender on the deed of trust, and therefore it holds the right to foreclose. (Reply at 4, Dkt. 12.)

[13] The language of the trust deed also provides support for the right of MERS, as beneficiary and as nominee for the Lender and Lender's successors (Bank of America, in this case), to appoint a "substitute trustee"— an action it took by appointing ReconTrust. The trust deed permits MERS, as nominee for Lender and Lender's successors, to exercise any right that the Lender might have, including the right to foreclose. (Compl. Ex. 1, Dkt. 4-2.) If Borrower defaults and Lender invokes the power of sale, "Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default." (Compl. Ex. 1 at ¶22, Dkt. 4-2.) The Deed of Trust does not specifically define "lender" to include a purchaser of the Note from the original lender, and MERS is designated as nominee for the Lender with legal title to the

fails to do so, the beneficiary of the trust deed may initiate foreclosure, through the trustee, following the procedures set forth by Idaho's statutes. Although this may have created "a complex payment arrangement for receiving the benefit of the obligation," it "creates no practical harm" for Washburn, and no basis in which to quiet title. *Id.* The byzantine nature of the arrangement is not on this record a basis on which to "quiet" title in Washburn.[14]

Accordingly, because there are no interests adverse to Washburn that need to be determined, the Court recommends that the Motion to Dismiss be granted on this additional basis.

**5.    Defendants Are Not Required to Produce the Promissory Note**

Although Washburn initially requested that Defendants be required to produce the original Note, Washburn's opposition brief clarifies her argument that because "there are serious doubts concerning ownership of the loan . . . it is appropriate, and it should be required, that the original note be produced in court to establish that at least someone is entitled to enforce the loan." (Pl.'s Opp. at 15, Dkt. 8). However, Washburn has not provided any authority to require that the Note be produced, or some particular legal

---

interests granted by Borrower in the Trust Deed; MERS is therefore able to exercise rights that would otherwise be exercised by the Lender. (*See* Compl. Ex. 1 at 4 and at ¶22, Dkt. 4-2.)

[14] For similar reasons, the Court will not consider Washburn's challenge to the notices provided or procedures followed in initiating the trust deed foreclosure process. This is not an action for wrongful disclosure, but one to quiet title, and Washburn has not shown that any of the notices provided or procedures followed cloud title to the Property.

requirement peculiar to the cause of action. Nor are there any indications in the record that the document has been requested in discovery, not produced, and Washburn seeks to compel its production.

Here, the Idaho statutes governing trust deed foreclosure do not require the trustee to produce the promissory note that was executed along with the trust deed to initiate non-judicial foreclosure proceedings. *See* Idaho Code § 45-1502-1515. Moreover, the Court has found no additional authority requiring production of the Note in this case or in a quiet title action in general.[15] To the extent Washburn seeks production of the Note as a remedy, it is recommended that the District Court grant Defendants' Motion to Dismiss.

Nevertheless, the Court indicates for the record that Defendants have produced what appears to be the original Note. (*See* Mot. Ex. 1, Dkt. 22-1.) The Note indicates that Borrower (Washburn) promises to pay Lender (America's Wholesale) the sum of $399,000.00 at an interest rate of 6.25%, and that monthly payments of principal and interest totaled the sum of $2,456.71. The Note also expressly states that "Lender may

---

[15] Indeed, there are several cases interpreting other states' foreclosure proceedings in which courts have rejected similar requests. *See, e.g., Gontenas v. Household Finance Corp. of California*, Case No. C 11–02633 CW, 2011 WL 3583400, *1 (N.D.Cal. Aug. 12, 2011) (explaining that, "in California, there is no requirement that a trustee produce the original promissory note prior to a non-judicial foreclosure sale," and rejecting plaintiff's request that Defendants be required to produce the original note and trust deed); *Diessner v. Mortgage Elec. Registration Sys.*, 618 F.Supp.2d 1184, 1187 (D.Ariz. 2009) (noting that the absence of any controlling authority providing that the cited Arizona UCC section applies in non-judicial foreclosure proceedings and emphasizing that district courts "have routinely held that plaintiff's 'show me the note' argument lacks merit"); *Wayne v. HomEq Servicing, Inc.*, Case No. 2:08-cv-00781-RCJ-LRL, 2008 WL 4642595, *3 (D.Nev., Oct. 16, 2008) (explaining that "[c]ourts across the country have rejected claims by plaintiffs asserting a duty by the lender to provide the original note under the U.C.C. to prove its holder in due course status").

<u>transfer this Note</u>. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'" Washburn was given notice, and expressly agreed, that the Lender could transfer the Note. Moreover, the Note indicates that, when such a transfer occurs, Washburn's obligation to pay would continue, and she would be informed where to send her payments. The Deed of Trust specified also that a "Loan Servicer" may be designated to collect payments due under the Note. (Compl. Ex. 1 at ¶ 20, Dkt. 4-2.) Thus, it is of no consequence that Washburn know who the note holder is, only where to send her payments, as there is no legal or equitable obligation to notify Washburn of any sale of the Note or even to tell her who the note holder is.

**6.     Plaintiff's Additional Arguments**

Plaintiff made several additional arguments at the time of the hearing that were not presented to Judge Bush in *Meyer v. Bank of America, N.A., et. al.,* Case No. 1:10-cv-00632-EJL-REB. These arguments include: (1) MERS is not a valid beneficiary under Idaho Code § 45-1502(1) and lacks standing to enforce the Note; (2) MERS and Bank of America are not entitled to enforce the Note because they cannot demonstrate possession of the Note or the authority to enforce it; (3) ReconTrust is not a valid Trustee because MERS did not have authority to appoint ReconTrust; and (4) ReconTrust is not entitled to foreclose because the assignments to it were not properly recorded.

All of the aforementioned claims are not raised in the Complaint. The Complaint asserts one claim, that of quiet title; the Complaint does not attack or allege that any of

the Defendants lack the ability to foreclose, or otherwise seek an injunction at this time to halt any foreclosure sale. Importantly, a foreclosure sale has not occurred. There is therefore nothing at this time to invalidate. Moreover, the arguments raising the issue of standing, ability to enforce the Note, entitlement to foreclose, and attacking the successor Trustee's ability to initiate foreclosure proceedings are defenses properly raised in the context of a foreclosure action, and are not claims properly raised in a plaintiff's complaint to quiet title.

Even if Washburn's arguments were properly raised at this time, they fail. Taking Washburn's arguments that MERS is not a valid beneficiary and lacks standing to enforce the note or appoint ReconTrust, and in turn restricting ReconTrust's ability to foreclose, Washburn's arguments are misplaced. Washburn's standing argument focuses on the ability of MERS to enforce the right to payment. But foreclosing on a trust deed is distinct from the collection of the obligation to pay money. Payment of funds is not the object of the foreclosure action. Rather, the lender is foreclosing upon its interest in the property. With a trust deed, the trustee possesses the power of sale which may be exercised after a breach of the obligation for which the transfer in trust of the interest in real property is security. Foreclosure by the trustee is not the enforcement of the obligation because it is not an attempt to collect funds from the debtor. *Hulse v. Ocwen Federal Bank, FSB* 195 F.Supp.2d 1188, 1204 (D. Or. 2002).[16]

---

[16] Thus, to the extent Washburn relies upon *In re Wilhelm*, 407 B.R. 392 (Bankr. D. Idaho 2009) and *In re Sheridan*, Case No. 08-20381-TLM, 2009 WL 631355 (Bankr. D. Idaho Mar. 12, 209), such reliance is misplaced. In both of those cases, the bankruptcy court was asked

Moreover, the Court of Appeals for the Ninth Circuit in *Cervantes v. Countrywide Home Loans*, No. 09-17364 (9th Cir. Sept. 7, 2011)[17], recently rejected the "sham beneficiary" argument raised here by Washburn. In *Cervantes*, plaintiffs argued that MERS was not a true beneficiary, but rather a "sham beneficiary" without the authority to carry out a foreclosure sale. Washburn makes the same argument here. (Pl.'s Opp. at 11, Dkt. 8.) However, the court explained that MERS was acting solely as "a nominee for Lender," holds "only legal title," and that MERS had the right to foreclose. The court noted that the plaintiffs agreed to those terms in the Deed. *Cervantes* at 16991. Therefore, the court held that the plaintiffs were not misinformed about MERS's role in their home loans. *Id.* In addition, the court explained that MERS's role as the beneficiary could be at issue if MERS initiated foreclosure in its own name, but that there was no issue in that case because the trustee initiated foreclosure in the name of the lenders. *Cervantes* at 16994.

Similarly, Washburn signed a deed of trust identifying MERS as both the beneficiary under the Deed of Trust and the nominee for the Lender, she agreed that the Lender could sell the Note one or more times, and she agreed that MERS could exercise

---

to determine whether MERS, and various other parties, had "standing" under the Bankruptcy Code to enforce the right to payment under the notes, and thereby seek relief from the automatic stay. That is not the question or the argument presented here, which is whether MERS, under the terms of the Deed of Trust, can initiate foreclosure proceedings. Moreover, both *Wilhelm* and *Sheridan* dealt with a lack of proof, which argument Washburn has not presented to the Court.

[17] *Cervantes* has not yet been published in an accessible electronic database. It can be found at the Ninth Circuit Court of Appeal's website, http://www.ca9.uscourts.gov/datastore/opinions/2011/09/07/09-17364.pdf.

the Lender's rights on its behalf. In addition, it is clear in this case, as in *Cervantes*, that MERS is not initiating foreclosure—rather, the trustee, ReconTrust, is initiating foreclosure in the name of the lenders. Even if MERS were not a true beneficiary, the lenders "would still be entitled to repayment of the loans and would be the proper parties to initiate foreclosure after [Washburn] defaulted on [her loan]." *Cervantes* at 16994. The Deed expressly states that Lender can cause Trustee to execute a notice of default, which is what occurred in this case. (Mem. Ex. 1 at ¶ 22, Dkt. 4-2.) Accordingly, Washburn's argument that MERS is not a "proper beneficiary" is misplaced, and fails.

As for MERS's ability to appoint a successor trustee, the Deed of Trust expressly allowed MERS, as beneficiary, to do so. The Deed of Trust identified Fidelity National Title as the original Trustee, MERS as the beneficiary, and granted to Trustee the power of sale. (Compl. Ex. 2, Dkt. 4-2 at 3.) MERS was granted the right to exercise any action required of Lender, including the right to appoint a successor trustee. (Dkt. 4-2 ¶ 24, at 11.) MERS appointed ReconTrust as the successor beneficiary on December 22, 2008, which was recorded as Instrument No. 108135483. Upon recording the Appointment of Successor Trustee in the mortgage records of the county in which the trust deed is recorded, the successor trustee became vested with all of the powers of the original trustee. The Appointment of Successor Trustee was recorded in Ada County, where the Deed of Trust was recorded, on December 7, 2005, as Instrument No. 105186187. Accordingly, ReconTrust was appropriately vested with the powers of the original trustee, which includes the power of sale.

Next, Washburn argues that MERS and Bank of America are not entitled to enforce the Note because they cannot demonstrate possession of the Note or the authority to enforce it. Washburn relies upon the argument that MERS and Bank of America are not "holders" of the Note under the Uniform Commercial Code, Idaho Code §28-1-201(21). Defendants argue that a party's right to initiate non-judicial foreclosure is governed by the trust deed and the statutes applicable to the right to foreclose, not the Uniform Commercial Code. The Court agrees that the provisions of the UCC do not apply to the instant transaction, as the Code's provisions are limited to the sale of goods, or personal property, not real property. Idaho Code §28-1-201(35) (defining "security interest" as an interest in "personal property").

To the extent that Washburn may attempt to rely upon *Armacost v. HSBC Bank USA, NA,* Case No. 1:10-cv-00774-EJL-LMB Dkt. 19 (Dist. Idaho Feb. 9, 2011), which addressed whether the foreclosing entity must be in possession of the Note to have the right to enforce the Trust Deed, such reliance is misplaced. There, the claims were brought under the Fair Debt Collection Practices Act, 15 U.S.C.A. §§ 1962 *et. seq.* The plaintiffs argued that the defendants did not have the right to enforce the trust deed because they could not also show they possessed the Note. In *Armacost*, the court explained that the accepted view under the Restatement is that the assignment of the security also assigns the debt unless there is an indication of the parties' intent not to assign the debt. *Armacost* at 23. The Restatement states that "a transfer of an obligation secured by a mortgage also transfers the mortgage unless the parties to the transfer agree

otherwise." *Id.* (citing Restatement (Third) of Property, Mortgages § 5.4(b) (1977)). The court then noted that it was unable, based upon the record before it, to recommend granting defendants' motion to dismiss because the assignment of the deed of trust did not indicate sufficient intent on the part of Defendant Wells Fargo to also assign the Note, given the court was not provided with a copy of the Note. *Armacost* at 25.

In the instant case, the Court was provided with a copy of the Note. The Note expressly states that Lender (originally America's Wholesale) could transfer the Note, and that anyone who takes the Note by transfer and is entitled to receive payments under the note is called the Note Holder. (Mot. Ex. 1, Dkt. 22-1.) Defendants explained the complex set of legal relationships and transactions that ultimately led Bank of America to possess the Note. (Mem. at 2, n.1, Dkt. 4-1.) In addition, the Trust Deed indicated that the Note, together with the Trust Deed, could be sold and that a sale might result in a change in the entity known as the Loan Servicer, which is the entity that collects the payment due on the Note. (Dkt. 4-2 ¶ 20 at 10.) In other words, the trust deed expressly contemplated that Washburn might be sending her payments to a loan servicer, which in turn paid the actual lender. Given that Defendant Bank of America has produced, and therefore is in possession of, the Note, it would stand to reason that Bank of America is the holder of the Note and the funds are either deliverable to it or deliverable to it on behalf of any lender to whom the debt may have been sold. Other than bare assertions, Washburn has not plead sufficient facts to indicate that Fannie Mae, or any other entity besides Bank of America, is the Note Holder.

The Deed of Trust indicates throughout the document that the Note, "together with this Security Instrument" can be sold. (Dkt. 4-2 at 10.) In other words, any transfer or sale transferred both the debt and the security instrument together, and Washburn expressly agreed to those terms. Accordingly, unlike in *Armacost*, the Note and Deed of Trust do indicate sufficient intent to assign both the Note and the Security instrument together whenever there was a transfer of ownership.

**7.      Defendants' Motion for Reverse Preliminary Injunction**

Defendants' second motion requests that Washburn post a bond for the amount of the mortgage, or require Washburn to pay her mortgage obligation of $2,456.71 every month, in anticipation of Washburn filing a motion for preliminary injunction seeking to halt the foreclosure sale. Alternatively, Defendants request permission to conduct the pending trustee's sale of the Property. Other than rehashing the same arguments in opposition to Defendants' Motion to Dismiss, and lambasting the corporate bailouts of Fannie Mae and Freddie Mac, Washburn has not offered any concrete arguments opposing such action.

Nevertheless, given that the Court is recommending Washburn's Complaint be dismissed, the Court sees no purpose in recommending that Defendants' request that Washburn post a bond or otherwise continue paying her mortgage payments each month be granted. Instead, it appears appropriate to recommend dismissal of the Complaint, thereby allowing Defendants to continue with their foreclosure sale. Any issues that may arise requiring posting of a bond may be addressed in that context. Any ruling prohibiting

Washburn from filing a motion for preliminary injunction premised on the requirement she post a bond now is premature, although the Court acknowledges that such a posture may create more litigation for Defendants. The issue is not, however, presently before the Court in the appropriate procedural context.

## CONCLUSION

Based upon the foregoing, the Court recommends that the Defendants' Motion to Dismiss be granted. Washburn has not alleged sufficient facts, and has conceded she cannot do so, under established Idaho law requiring tender before a court will quiet title as against a mortgagee. As to Washburn's other arguments, extensive commentary from this court and from the Ninth Circuit compel the conclusion that Washburn has not stated a cognizable legal theory in the context of a quiet title action to attack the ability of MERS, or any of the other named entities, to foreclose. Those arguments are more properly raised as defenses in the context of other claims attacking the validity of the Note and Deed of Trust.

## <u>RECOMMENDATION</u>

**NOW THEREFORE IT IS HEREBY RECOMMENDED:**

      1)    Defendants' Motion to Dismiss (Dkt. 4) be **GRANTED** without leave to amend.

      2)    Defendants' Motion for Reverse Preliminary Injunction (Dkt. 22) be **DENIED.**

      Written objections to this Report and Recommendation must be filed within fourteen (14) days pursuant to 28 U.S.C. § 636(b)(1) and Dist. Idaho L. Rule 72.1(b), or as a result of failing to do so, that party may waive the right to raise factual and/or legal objections to the United States Court of Appeals for the Ninth Circuit.

Dated: October 21, 2011

Honorable Candy W. Dale
United States Magistrate Judge